IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 9, 2025

## STATE OF TENNESSEE v. LIONEL VASHON CHAMPION

**Appeal from the Circuit Court for Madison County**
**No. 22-897   Kyle Atkins, Judge**

_____

### No. W2024-01700-CCA-R3-CD

_____

The Defendant, Lionel Vashon Champion, was convicted by a Madison County Circuit Court jury of possession with intent to sell .5 grams or more of cocaine, a Class B felony; possession with intent to deliver .5 grams or more of cocaine, a Class B felony; use or unlawful possession of drug paraphernalia, a Class A misdemeanor; two counts of unlawful possession of a firearm with the intent to go armed during the commission of a dangerous felony, Class D felonies; four counts of unlawful possession of a firearm after having been convicted of a felony drug offense, Class C felonies; unlawful possession of a firearm after having been convicted of a crime of violence, a Class C felony; and eight counts of unlawful possession of a firearm during the commission of or attempt to commit a dangerous felony having previously been convicted of a felony drug offense, Class D felonies.  *See* T.C.A. §§ 39-17-417 (Supp. 2022) (subsequently amended) (possession of a controlled substance), 39-17-425 (2018) (possession of drug paraphernalia); 39-17-1324 (Supp. 2024) (armed dangerous felonies); 39-17-1307 (Supp. 2022) (subsequently amended) (carrying or possession of weapons).  The trial court sentenced the Defendant, a career offender, to serve an effective sentence of forty-two years, eleven months, and twenty-nine days.  On appeal, the Defendant contends that (1) the trial court erred in admitting evidence of the Defendant's incoming and outgoing text messages, (2) the court erred in permitting a witness to read one of the text messages to the jury, and (3) the court erred in denying the motion for a new trial.  We affirm the trial court's judgments.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Mariah McCallister (on appeal) and Harold Dorsey (at trial, sentencing, and motion for a new trial), Jackson, Tennessee, for the appellant, Lionel Vashon Champion.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions arise from his drug-related activity and firearm possession. A search warrant was executed at a home on February 15, 2022, and law enforcement officers recovered small plastic baggies, rocks of crack cocaine, a syringe, injectable naloxone, and an iPhone from the home. A compartment under the seat of a scooter in the backyard contained a .9-millimeter handgun, a digital scale, and 4.6 grams of powder cocaine. An old license plate registered to the Defendant's brother was also in the compartment. A truck later identified as belonging to the Defendant was parked across the street from the house at the time of the search. The Defendant was arrested on February 22, 2022, and his Samsung cell phone was collected as evidence. As relevant to the issues raised on appeal, the counts of the indictment related to possession of cocaine with the intent to sell and possession of cocaine with the intent to deliver charged that the conduct occurred between September 4, 2021, and February 15, 2022. The counts charging firearms offenses alleged that the conduct occurred between September 16, 2021, and February 15, 2022.

The State's evidence showed that the Defendant was the account holder for the utility services at the home where the warrant was executed. The State's proof also showed that a police officer had an encounter with the Defendant prior to the search, at which time the Defendant was driving the scooter. The defense theorized that Darrell Turner lived at the home and stored drugs and the handgun in the scooter, which had been at the home for about one month because it was inoperable. The defense claimed that the Defendant did not live at the home and that his only visits to it were in furtherance of his extramarital relationship with Janet Salerno. The defense also theorized that the Defendant was the accountholder for the home's utilities because Mr. Turner, who was a close friend of the Defendant, was unable to obtain an account of his own for utility services. Mr. Turner and Ms. Salerno were at the home when the search warrant was executed, but the Defendant was not. Ms. Salerno testified for the defense that she and Mr. Turner had sold drugs from the home but that she had never seen the Defendant sell drugs.

All of the Defendant's appellate issues relate, in varying degrees, to the trial court's admission of evidence of numerous text messages sent from and received by the Defendant's cell phone. The messages were generally inculpatory of the Defendant's selling controlled substances and included references to slang such as "a ball" and

-2-

"smoke," quantities,[1] dollar amounts, "Cash app," and the screen name of a Cash app user. The messages sent from the Defendant's cell phone included statements that the sender needed to receive money and would not extend credit to the message recipients. Relative to ownership of the gun found in the scooter, a text message referenced the Defendant's possessing "a strap." The Defendant's cell phone also contained photographs, including one which depicted a gun and was included in an outgoing text message.

In preliminary proceedings on the day of trial, the Defendant objected to admission of the incoming text messages as hearsay. The State argued that the messages were relevant and admissible and that they satisfied the requirements of Tennessee Rule of Evidence 404(b) for admission of other crimes, wrongs, or acts evidence.[2] The trial court made the following relevant findings:

> The first thing the Court's got to look at and see if there's an issue other than conduct conforming to a specific character trait, it appears that these text messages are going to be introduced to show intent to possess the drugs with the intent to sell, which is an element of the crime that the State would be required to prove at trial, so that factor's been satisfied.
>
> The Court finds there's clear and convincing evidence of the text messages. They came from the phone. And I don't think the probative value is outweighed by any danger of unfair prejudice.
>
> So for those reasons, I'm going to allow the text messages to be entered.

*See* Tenn. R. Evid. 404(b)(1)-(4).

---

[1] Many of the messages about quantities were vague as to the substance involved. For example, they referenced "a 60," "half a gram of smoke," "14 g of loud," and "a gram." In several instances, a dollar amount was mentioned in conjunction with a quantity reference, such as, "if u let me get a half ill give u 150," "Can u do one more half and we'll leave the bill at 200 for the month," and "Bra can u do a gram and I'll give you 150 Friday morning[.]"

[2] Two days before the trial, the Defendant filed a motion to suppress the text messages on the basis that his cell phone was searched illegally. The next day, the trial court denied the motion as untimely. On the first day of the trial, the Defendant asked the court to reconsider its ruling. The court permitted questioning of two police officers involved in receiving the Defendant's cell phone and the phone's PIN. The court credited the officers' testimony that they did not view the cell phone's contents before a search warrant was obtained and denied the motion to suppress.

The Defendant then objected to the admission of all the text messages for the time period charged in the indictment, arguing that the State should be limited to admission of the text messages for the week preceding the February 15, 2022 search. The trial court was unpersuaded and denied the request to limit the time period for admissibility.

During the State's cross-examination of Ms. Salerno as a defense witness, the prosecutor sought to have her read a previously admitted text message from the Defendant's cell phone which was not a message she had sent to him. The message was from a contact identified as "Vet" and complained about the quality of drugs the person bought from "DD," who other evidence showed was Mr. Turner, and the message stated that the Defendant was Mr. Turner's supplier. The defense objected on the basis that the text message was hearsay, and the trial court overruled the objection, noting that the text message had already been ruled admissible and received as evidence. Ms. Salerno then read the message at the prosecutor's request and testified that she was not Vet and that the Defendant was not her supplier for the drugs she sold from the home.

After the jury found the Defendant guilty, the Defendant filed a motion for a new trial, in which he alleged that the evidence was insufficient to support the convictions.[3] The trial court found that the evidence was sufficient and denied relief. This appeal followed.

# I

## Evidentiary Issues

### A. Text Messages

The Defendant contends that the trial court erred in admitting text messages recovered from the Defendant's cell phone, which the State offered as proof that the Defendant engaged in drug transactions in the time period alleged in the indictment. As we have stated, the Defendant initially objected to the incoming messages as being inadmissible hearsay. The State argued that the messages were admissible to show the Defendant's intent to sell and deliver drugs during the time period alleged and that the messages were admissible in accord with Tennessee Rule of Evidence 404(b).

---

[3] The Defendant filed a pro se motion for a new trial, and defense counsel also filed a motion for a new trial. At the hearing on the motions, defense counsel stated that the issues asserted in the pro se motion were appropriate for post-conviction proceedings and "could be addressed . . . after [the Defendant's] appeals are complete."

In its appellate brief, the State notes correctly that the Defendant did not raise this evidentiary issue in the motion for a new trial. "[I]n all cases tried by a jury, no issue presented for [appellate] review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." T.R.A.P. 3(e). The State argues that plenary review of the issue is waived. We agree.

Having anticipated the State's waiver argument, the Defendant argues that this evidentiary issue was raised in the motion for a new trial as part of his sufficiency of the evidence challenge. We view the motion for a new trial to encompass one issue related to thirteenth juror and sufficiency of the evidence concerns, in which the Defendant argued that the import and weight of the evidence should be reevaluated. We do not view the allegations of the motion for a new trial to have raised freestanding issues related to alleged error in the admission of evidence. Nevertheless, the Defendant also urges this court to consider the issue as a matter of plain error.

Plain error relief is limited to errors which are "clear, conspicuous, or obvious" and which affect the defendant's substantial rights. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016). Five factors are relevant

> when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)); *see also State v. Minor*, 546 S.W.3d 59, 70 (Tenn. 2018). All five factors must exist in order for plain error to be recognized. *Smith*, 24 S.W.3d at 283. "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id*. In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the trial." *Id.*; *Adkisson*, 899 S.W.2d at 642.

In the present case, the record clearly establishes what occurred in the trial court. *See Smith*, 24 S.W.3d at 283. Although the record is silent as to whether the Defendant

waived consideration of this issue for tactical reasons, no tactical advantage is apparent to this court in failing to raise an evidentiary issue in the motion for a new trial when such is required by Tennessee Rule of Appellate Procedure 3(e). *See id.* Consideration of the remaining plain error factors is warranted.

Tennessee Rule of Evidence 404(b) prohibits the admission of evidence related to other crimes, wrongs, or acts offered to show a character trait in order to establish that a defendant acted in conformity with the trait. Tenn. R. Evid. 404(b). Such evidence, though, "may . . . be admissible for other purposes," including, but not limited to, establishing identity, motive, common scheme or plan, intent, or absence of mistake. *Id.*; *see State v. McCary*, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003). Before a trial court determines the admissibility of such evidence,

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1)-(4). The standard of review is abuse of discretion, provided a trial court substantially complied with the procedural requirements. *State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *see State v. Electroplating, Inc.*, 990 S.W.2d 211 (Tenn. Crim. App. 1998). An abuse of discretion occurs when a court "'causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" *State v. Reynolds*, 635 S.W.3d 893, 921 (Tenn. 2021) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

At the outset, we take this opportunity to, once again, caution that "rarely will plain error review extend to an evidentiary issue." *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540, at *2 (Tenn. Crim. App. Sept. 11, 2007); *see State v. Haymer*, 671 S.W.3d 568, 578 (Tenn. Crim. App. 2023) (citing *Ricky E. Scoville*, 2007 WL

-6-

2600540). The record reflects that the State sought to introduce the messages to demonstrate the Defendant's intent to possess the cocaine found during the search of the scooter with the intent to sell or deliver the cocaine. The trial court conducted the legal analysis prescribed by Rule 404(b). It found that clear and convincing evidence existed to show that the messages came from the Defendant's cell phone, that the messages were probative of the Defendant's intent to commit the charged offenses, and that their probative value outweighed the danger of unfair prejudice. In previous cases in which the trial court properly conducted a Rule 404(b) hearing and made the requisite findings, this court has concluded that no abuse of discretion occurred in the trial court's admission of text messages as probative of a defendant's intent to possess narcotics with intent to sell or deliver. *See, e.g.*, *State v. Michael Robert Quinn*, No. E2022-01661-CCA-R3-CD, 2024 WL 1097642, at *21 (Tenn. Crim. App. Mar. 13, 2024), *perm. app. denied* (Tenn. July 18, 2024); *State v. Randal Ledon Tate*, No. E2021-00217-CCA-R3-CD, 2022 WL 591872, at *5-6 (Tenn. Crim. App. Feb. 28, 2022), *perm. app. denied* (Tenn. June 8, 2022). The Defendant has failed to demonstrate the existence of the remaining factors required for plain error relief. *See Smith*, 24 S.W.3d at 283.

The Defendant is not entitled to relief on this basis.

**B. Ms. Salerno's Reading a Previously Admitted Text Message**

The Defendant contends that the trial court abused its discretion in allowing the State, during cross-examination of Ms. Salerno, to have the witness read a previously admitted text message to the jury. The Defendant argues that the text message was inadmissible hearsay and that Ms. Salerno could not testify about evidence of which she had no personal knowledge. The State argues that the Defendant waived appellate consideration of this issue by failing to raise it in the motion for a new trial, that the Defendant has not requested plain error review, and that plain error relief is not required. The Defendant has not filed a reply brief responding to the State's waiver argument.

Because the issue was not raised in the motion for a new trial, appellate consideration of the issue is waived. With regard to plain error consideration, the record reflects that the State cross-examined Ms. Salerno about her testimony that she never saw the Defendant sell drugs. At the prosecutor's direction, she read the following excerpt from the exhibit containing the text messages recovered from the Defendant's cell phone:

> Look, black, for now on if I ain't buying from you or your stash I don't need – I don't – Don't send me to DD. I don't want to buy it from DD. It doesn't take rocket science to know if that -- if he takes that s--- you give him, goes back and fluffs it up with more cut. I ain't green and neither are you.

The message was from "Vet," and Ms. Salerno confirmed that Vet was not her nickname and that she had not sent the text message. She confirmed that DD was Mr. Turner's nickname, and she again asserted that she never saw the Defendant sell drugs and that she did not obtain the drugs she sold from the Defendant.

As the State noted at the trial, the text message had already been received as evidence during the State's case-in-chief. To the extent that the defense objected to it as hearsay, the trial court had already ruled on its admissibility. "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility [subject to exceptions not relevant to the present case]." Tenn. R. Evid. 611(b). A trial court is afforded "broad discretion in controlling the course and conduct of [a] trial." *State v. Davidson*, 509 S.W.3d 156, 194 (Tenn. 2016); *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001); *State v. Cazes*, 875 S.W.2d 253, 260 (Tenn. 1994). To the extent that the Defendant argues that Ms. Salerno had no personal knowledge of the text message because she was not the sender, the purpose for which the State sought to cross-examine her was to impeach her about her claim she had no knowledge of the Defendant's selling drugs and whether he supplied her with the drugs she sold. The record fails to demonstrate that a clear and unequivocal rule of law was breached. *See Smith*, 24 S.W.3d at 283. Plain error relief is not appropriate. *See id.*

The Defendant is not entitled to relief on this basis.

## II

## Denial of the Motion for a New Trial

The Defendant contends that the trial court erred in denying his motion for a new trial because the evidence was insufficient to support his convictions for possession of cocaine with intent to sell and possession of cocaine with intent to deliver.[4] He argues that, in the absence of the text messages from his cell phone, no rational jury could find him guilty beyond a reasonable doubt. He argues that the text messages provided the only evidence of his intent to possess drugs for sale and delivery. The State counters that the court did not err in denying the motion for a new trial. We agree with the State.

With regard to the Defendant's suggested remedy – a new trial – for his claim of legally insufficient evidence, we are constrained to note that the remedy for insufficient evidence to support a conviction is reversal of the conviction and dismissal of the charge,

---

[4] The Defendant argues that the evidence was insufficient to support "his convictions," but his brief specifically addresses only the convictions for possession of cocaine with intent to sell and possession of cocaine with intent to deliver and is silent as to the remaining sixteen convictions. Accordingly, we have limited our sufficiency review to the two convictions the Defendant has addressed in his argument.

not a new trial. *See State v. Franklin*, 585 S.W.3d 431, 457 (Tenn. Crim. App. 2019). That said, Tennessee Rule of Criminal Procedure 33(d) provides, in pertinent part, "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." The record reflects that the court discharged its duty as thirteenth juror and approved the verdict. An appellate court may not function as a thirteenth juror. *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). The Rules of Appellate Procedure limit the role of an appellate court relative to findings of guilt in criminal cases to the question of whether the evidence "is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e).

To that end, the Defendant's argument is premised upon a faulty legal principle – only properly admitted evidence is subject to inclusion when conducting a sufficiency-of-the-evidence review of a conviction. The law has long provided otherwise. All evidence received at the trial, whether admitted properly or in error, must be considered by an appellate court when reviewing the sufficiency of the evidence to support a conviction. *State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981); *State v. Franklin*, 585 S.W.3d 431, 457 (Tenn. Crim. App. 2019).

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is well established that the identity of the perpetrator is an essential element of any crime." *State v. Miller*, 638 S.W.3d 136, 158 (Tenn. 2021). The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). We apply the same

standard of review, whether the evidence is direct or circumstantial. *Dorantes*, 331 S.W.3d at 379.

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance."  T.C.A. § 39-17-417(a)(4). Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."  *Id*. § 39-17-402(6) (Supp. 2022) (subsequently amended).  A sale is "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery" of the substance.  *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002).  Possession of cocaine with the intent to deliver or to sell is a Class B felony "if the amount involved is point five (0.5) grams or more[.]"  T.C.A. § 39-17-417(c)(1).  "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."  *Id*. § 39-17-419 (2018).

Viewed in the light most favorable to the State, the evidence shows that the Defendant possessed cocaine, a controlled substance.  *See id*. § 39-17-408(b)(2) (Supp. 2024) (classifying cocaine as a Schedule II controlled substance).  A .9-millimeter handgun, a digital scale, and 4.6 grams of powder cocaine were recovered from a compartment under the seat of the Defendant's motor scooter, which was parked at a home the Defendant was known to frequent.  Text messages recovered from the Defendant's cell phone discussed apparent drug transactions in which the Defendant was the seller.  The messages included references to drug quantities, prices, and information about paying through a cell phone app.  The amount of cocaine recovered from the Defendant's scooter, 4.6 grams, along with the digital scale and the text messages, supported an inference that the Defendant possessed the drugs for sale or delivery.

The evidence is sufficient to support the Defendant's convictions for possession of cocaine with the intent to sell and possession of cocaine with the intent to deliver.  He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE

-10-